# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**UNITED STATES OF AMERICA**

VS.                                                  **CASE NO: 6:24-cr-200-PGB-UAM**

**JOSE DAVID FIGUEROA PACHECO**
_____/

## **ORDER**

This cause is before the Court on Defendant Jose David Figueroa Pacheco's ("**Defendant**") Motion *in Limine*. (Doc. 97 (the "**Motion**")). The Government submitted a response in opposition. (Doc. 100). Upon consideration, the Defendant's Motion is granted.

## I.  BACKGROUND

The Defendant is charged, along with co-defendant Alberto Ismael Salinas Valencia, in Count Seven, of an eleven-count indictment, with possessing with the intent to distribute fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) and 18 U.S.C. § 2 (aiding and abetting). (Doc. 1). The indictment does not include a conspiracy count.

Count Seven arises from a controlled purchase of fentanyl occurring on December 13, 2023. (*Id*.). The Government contends that Defendant obtained the fentanyl from the source of supply and provided it to Salinas Valencia, who sold it to an undercover law enforcement officer (the "**undercover officer**"). (Doc. 100, p. 2). The Government will offer evidence showing that the undercover officer

overheard the Defendant on his cellular phone. (*Id*.). After the Defendant finished the phone call, the undercover officer saw a vehicle pull up next to the truck where the Defendant was seated. (*Id*.). The undercover officer observed an individual hand "a bag of blue pills" to the Defendant. (*Id*.). The Defendant inspected the bag and gave it to Salinas Valencia, who delivered the drugs to the undercover officer. (*Id*.)

The instant Motion concerns the admissibility of conversations between the undercover officer and Salinas Valencia on February 18, 2024, and June 27, 2024. (Doc. 97). The Government proffers that on February 18, 2024, following the controlled purchase of fentanyl on December 13, 2023, the undercover officer texted Salinas Valencia to inquire about the price of fentanyl pills. (*Id*. at p. 3). Salinas Valencia told the undercover officer that his "pill supplier" (the Defendant) had left town, and that Salinas and the undercover officer will never see him again. (*Id*.).

The undercover officer made additional purchases of fentanyl from Salinas Valencia, with the last occurring on August 9, 2024. (Doc. 100, p. 3). The Defendant was not implicated in these subsequent drug transactions. However, on June 27, 2024, while discussing the price of fentanyl pills, the undercover officer again asked Salinas Valencia about the individual who supplied the pills on December 13, 2023. (*Id*.). Salinas Valencia responded that the Defendant had a connection with the fentanyl supplier and reiterated that the Defendant disappeared, adding that he left the area after robbing someone. (*Id*.). Salinas

2

Valencia explained that he had new suppliers, which is why the pills are more expensive. (*Id.*). The issue is whether the statements by Salinas Valencia were made during and in furtherance of the conspiracy and are, thus, admissible under Federal Rule of Evidence 801(d)(2)(E).

## II.   LEGAL STANDARDS

Under Rule 801(d)(2)(E), statements of co-conspirators made during the course and in furtherance of the conspiracy are not hearsay. *United States v. Miles*, 290 F.3d 1341, 1351 (11th Cir. 2002). For evidence to be admissible under Rule 801(d)(2)(E), the government must prove by a preponderance of the evidence: "(1) that a conspiracy existed; (2) that the conspiracy included the declarant and the defendant against whom the statement is offered; and (3) that the statement was made during the course and in furtherance of the conspiracy." *Id.*; *see also United States v. Wenxia Man*, 891 F.3d 1253, 1272 (11th Cir. 2018). In determining whether the hearsay exception is met, the court may consider the co-conspirator's proffered statement and independent external evidence. *Id.* (citations omitted). This circuit applies "a liberal standard in determining whether a statement is made in furtherance of a conspiracy." *Miles*, 290 F.3d at 1351 (citing *United States v. Santiago*, 837 F.2d 1545, 1549 (11th Cir. 1988)).

Whether a statement is "in furtherance of the conspiracy" is a fact-specific inquiry. *United States v. Monroe*, 866 F.2d 1357, 1363 (11th Cir. 1989); *see, e.g.*, *United States v. Caraza*, 843 F.2d 432, 436 (11th Cir. 1988) (holding that statements made by one conspirator to a fellow conspirator identifying yet another

3

conspirator to affect future dealings between the parties are in furtherance of a conspiracy); *United States v. Pool*, 660 F.2d 547, 562 (5th Cir. 1981) ("[W]hen a conspirator provides information to his coconspirators necessary to keep them abreast of the conspiracy's current status, such statements are properly admitted as coconspirator declarations."); *United States v. Shoffner*, 826 F.2d 619, 628 (7th Cir. 1987) (finding that conversations made by conspirators to prospective coconspirators for membership purposes are in furtherance of the conspiracy); *United States v. Posner*, 764 F.2d 1535, 1537 (11th Cir. 1985) (finding that statements can be in furtherance of a conspiracy if meant to allay suspicion or fears of others); *Miles*, 290 F.3d at 1351 (finding that statements made to solicit membership or participation in the conspiracy and statements explaining the conspiracy to new members are made in furtherance of the conspiracy).

"It is well settled that an accused conspirator's participation in a criminal conspiracy is presumed to continue until all the objects of the conspiracy have been accomplished or until the last over act is committed by any of the conspirators." *United States v. Bergman*, 852 F.3d 1046, 1061 (11th Cir. 2017) (citation omitted). Thus, "a defendant's membership in the ongoing unlawful scheme continues until he withdraws." *Smith v. United States*, 568 U.S. 106, 133 (2013). Withdrawal typically arises as an affirmative defense in conjunction with a statute of limitations defense. To prove this defense, the defendant must completely withdraw from the conspiracy by taking some affirmative step to renounce or defeat the purpose of the conspiracy. *Bergman*, 852 F.3d at 1061. An affirmative

step includes an act that is inconsistent with the purpose of the conspiracy and communicated in a way that is reasonably likely to reach the other members. *Id*.

## III. DISCUSSION

As of December 13, 2023, the uncharged conspiracy consisted of Salinas Valencia, the Defendant, and the fentanyl supplier. The Government concedes that following the alleged fentanyl transaction on December 13, 2023, the Defendant left the Middle District and relocated to Houston, Texas, and was no longer acting as the middleman between the source of supply and Salinas Valencia. (Doc. 100, p. 2). According to the Government, Salinas Valencia told the undercover officer that his "pill supplier" (the Defendant) had left, and that Salinas and the Undercover will never see him again. (*Id*.). According to the Government, the Defendant permanently left that conspiracy before February 18, 2024, as shown by Salinas Valencia having to source the fentanyl pills from new sources. (*Id*. at p. 3).

Accordingly, the Defendant's involvement in the conspiracy ended before Salinas Valencia told the undercover officer on February 18, 2024, that his pill supplier had left and that they would never see him again. Even assuming the Defendant's decision to stop acting as the middleman for Salinas Valencia by permanently leaving does not amount to withdrawal, Salinas Valencia's statement to the undercover officer was not made in furtherance of the conspiracy. Salinas Valencia communicated with a law enforcement officer, not another current or prospective conspiracy member.

Similarly, Salinas Valencia's statements to the undercover officer on June 27, 2024, six months after the Defendant left Florida for Texas, were not made while the Defendant was a member of the conspiracy. The conspirators in December 2023 differ from those participating in the June 2024 transaction. And Salinas Valencia's statements implicating the Defendant as the middleman on December 13, 2024, do not further the conspiracy that existed in June 2024. Moreover, the defendant cannot conspire with a law enforcement officer, so Salinas Valencia's explanation to the officer for the increased cost of fentanyl does not further the conspiracy.

The Court finds that on February 18, 2024, and June 27, 2024, a conspiracy no longer existed between the Defendant and Salinas Valencia. Even if Defendant did not successfully withdraw from the December 2023 conspiracy, a new conspiracy was at work in February and June of 2024, and Defendant was not a participant in that conspiracy. Finally, assuming that a conspiracy existed in February and June 2024 and the Defendant was a member of that conspiracy, Salinas Valencia's statements to the undercover officer were not made to further the conspiracy.

## IV. CONCLUSION

The Defendant's Motion *in Limine* (Doc. 97) is **GRANTED**.

**DONE AND ORDERED** in Orlando, Florida on March 27, 2025.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties